Good morning everyone. Madam Clerk, will you please call the first case. 12-09-01, Mark v. City of Chicago. I'd like the attorneys to step up to the podium. I want you to tell the court your names, who you represent, and approximately how much time your argument will take. Will you please step up. Good morning, Counsel. Good morning, Your Honor. Stephen Collins for the City of Chicago, and I'll take approximately 15 minutes. Very good. You're going to reserve some time for rebuttal? Yes, five minutes, please. Okay, very good. Good morning, Counsel. Good morning. Regina Etherton on behalf of the Plano faculty. I can do it in 15 minutes. Very good. Okay, Mr. Collins, do you want to proceed with your argument? Thank you, Your Honor. May it please the Court. Mr. Smart brought a negligence action against the City, alleging that a City street was in an unsafe condition, which caused him to fall from his bicycle and sustain injuries. At the jury instructions conference, the City proposed the pattern instruction that explains the plaintiff's burden of proof in a premises liability case. The City also proffered a special interrogatory, asking whether the contributory negligence of Mr. Smart, if any, was greater than 50% of the proximate cause of his injuries. The circuit court denied each of these requests. This morning, I will concentrate on each of these decisions of the circuit court and explain why each of them constituted reversible error. But I'd like to begin with a special interrogatory issue. A circuit court has no discretion not to give a special interrogatory that is in proper form. And a special interrogatory is in proper form if it goes to an ultimate issue of fact upon which the rights of the parties depend, and if an answer to it would be inconsistent with the general verdict that the jury could reach. And the City's special interrogatory in this case met both of those requirements. It would have gone to an ultimate issue of fact, because if Mr. Smart were contributory negligent, and the negligence was more than 50% of the proximate cause of his injuries, he would have been barred from recovering. Furthermore, a yes answer to the City's special interrogatory would have been irreconcilable with the general verdict in favor of Mr. Smart. Well, let's assume we agree with you on that point, that a yes answer to the City's special interrogatory would have tested a general verdict in favor of the plaintiff. Isn't the interrogatory tendered by the City really multiple questions? Because the City never asked, the City never tendered a special interrogatory that said, do you find that Todd Smart was contributory negligent? Could have, but you didn't, right? That's correct, Your Honor. Okay, so the interrogatory that the City tendered is front-loaded to say, was the contributory negligence of Todd Smart, if any, more than 50% of the proximate cause of his injuries? Isn't that front-loading the problem? No, Your Honor, because a proper special interrogatory should track the language of jury instructions that are given in the case. And the City's special interrogatory here did meet that requirement. It tracked the language of instruction B-1003, which is the contributory negligence instruction that was given. And that pattern of instruction uses the exact same, if any, construction that the City followed here. Furthermore, if the City merely asked whether Mr. Smart were contributory negligent, that question by itself would not have tested the verdict, because it would not have gone to whether that contributory negligence was more than 50% of the proximate cause. Right, but the point is the City could have asked first, do you find that Todd Smart was contributory negligent, yes or no? Then a second special interrogatory the City would have been entitled to propound is, if you answer yes to special interrogatory number one, do you find that Todd Smart's contributory negligence was more than 50% of the proximate cause of his injuries? Couldn't the City have done that? Well, Your Honor, in light of the pattern of instruction B-1003, which was given in this case, it was appropriate for the City to construct the special interrogatory the way it did, asking one single question with the, if any, construction that was followed. And if, on the other hand, the City had broken up the question into multiple separate sentences, then you would run the risk of a jury returning inconsistent answers between one question and another. So it was entirely appropriate for the City to phrase the special interrogatory the way that it did. Furthermore, the Circuit Court in this case refused to give the special interrogatory, not by reference to what the special interrogatory itself said, but by comparing it to the verdict forms in this case, in particular, Verdict Form B. But the Appellate Court explained in the Snyder case that a verdict form cannot be used in lieu of a special interrogatory on contributory negligence. And that decision makes perfect sense in light of the well-established principle that the purpose of a special interrogatory is to test a general verdict. A verdict form does not test a verdict. It merely memorializes the verdict. And a special interrogatory tests a verdict by going to an ultimate issue of fact. And so for this reason, the City's special interrogatory should have been given because it would have tested the verdict. And that's because the Court said it would be confusing. That's why you're saying the issue is comparing the special interrogatory to the verdict forms? Your Honor, my understanding is that the Circuit Court seems to think that the verdict form already sufficed by instructing the jury on the contributory negligence question. But the purpose of the special interrogatory is to test the jury's comprehension of the case. And so it's to be expected that a special interrogatory will cover ground that's already been covered by the instructions and by a verdict form, because a special interrogatory is supposed to go to an ultimate issue of fact in the case. And that's what the special interrogatory here would have done. Could the City have propounded a special interrogatory that said, assuming you find Todd Smart was contributorily negligent, do you find that Todd Smart's negligence was more than 50% of the approximate cause of his injuries? Just stand alone. Never ask them to find contributory negligence. Well, Your Honor, that's a plausible way of phrasing it. It would have departed from the phrasing of Pattern Instruction B-10-03. And so for that reason, I believe the phrasing that the City proposed was preferable. But aside from that, the language that the City proposed need not be the best possible language that could have been proposed. The special interrogatory need only be in proper form. And because the special interrogatory here tracked the language of the pattern instruction, it was in proper form. Now, if there are no further questions on the special interrogatory issue, I'd like to move on to the jury instruction issue. Please proceed. Throughout the course of this litigation, from the filing of the complaint to the time the jury was charged, this case has been about whether a condition of city property caused Mr. Smart's injuries. But his complaint has a single count for negligence, right? That's correct, Your Honor. Just negligence. If I may have the Court's indulgence on this particular point,  with four specific types of conduct by the City. Failure to maintain its property in reasonably safe condition. Failed to warn the plaintiff of conditions on the south side of West Courland Street that were not reasonably safe. Failed to reasonably inspect the south side of West Courland Street for conditions that were not reasonably safe. And failed to repair the conditions on the south side of West Courland Street that were not reasonably safe. So, yes, the complaint was a single negligence count, but it was phrased clearly in terms of the condition of the city property. And for this reason, the Circuit Court should have given the pattern instruction for a premises liability case. That pattern instruction requires a plaintiff to prove that property was not or presented an unreasonable risk of harm and that the property owner could reasonably expect that a person would not anticipate the risk of the condition. Well, but the pattern jury instruction on premises liability requires a plaintiff to show actual or constructive notice of the unreasonably unsafe condition. And the comments to the instruction indicate that when the owner has created the condition on the property, the plaintiff doesn't have to show notice. So why would the trial court give an instruction that required the plaintiff to show notice when the plaintiff and the evidence showed that the city created the condition on its property? Well, Your Honor, this case concerns pattern instruction 120.08. And to my knowledge, I have it in front of me here. I don't see a notice requirement built into 120.08. The notes on you say that the instruction should not The second, the defendant knew or in the exercise of ordinary care should have known of both the condition and the risk. Sure, yes. Right. So it's notice. Plaintiff has to show notice to the landowner of the unreasonably unsafe condition. Okay. So why would, when the evidence and the plaintiff alleges that it was the owner that created the condition, why would the plaintiff ever have to show notice? Well, if the evidence establishes this element of the plaintiff's claim, then it shouldn't pose any problem for Mr. Smart in this case. The city's objection to the failure to give this instruction is that it did not require Mr. Smart to prove that the condition was not open and obvious. Okay. Now, that's where you lose me because there's nothing in this instruction that imposes a burden on a premises liability plaintiff to prove a negative. That is, that the condition that was on the property was not open and obvious. Open and obvious is a defense to a premises liability claim, right? Yes. The city would have to plead and prove it. Well, actually, Your Honor, it's, when this instruction is properly given, it is the plaintiff's burden of proving that the condition is not open and obvious. Do you have a case that says that? I've never seen a case that imposes a burden of proving a negative on a plaintiff. Well, Your Honor, a plaintiff could prove that the condition was not open and obvious by presenting testimony that by virtue of the condition's location, its size, the clarity of the day, that a reasonable person would have been able to recognize it. And to be fair, the pattern instruction does not use the specific terms open and obvious. Open and obvious is a defense that landowners typically assert. It was an open and obvious defect in the property. Yes, that's correct, Your Honor. Open and obvious does go, it's a concept that touches on a landowner's duty. And so a landowner does not have a duty to warn a person about an open and obvious condition. But pattern instruction 120.08 makes it clear that in order to prevail in a premises liability case, a plaintiff has to prove that the property owner should have reasonably expected that a person would not have appreciated the condition of the property that allegedly presented an unreasonable risk of harm. And that's what Mr. Smart should have been held to in this case. And by failing to give that instruction here, the circuit court improperly relieved Mr. Smart of that crucial element of his burden of proof. Now, the circuit court relied on the notes on use in deciding not to give this instruction. In particular, two exceptions that are stated in the notes on use. One is if an activity caused the injury, and the other one is if the condition arose out of the defendant's business. The circuit court believed that both exceptions applied to this case, but in fact, neither one does. There was no activity taking place when the injury happened. Activity connotes motion. Condition connotes stillness. And I'll give an example that hopefully illustrates the difference. Suppose a property owner is digging a hole on his property, and a person walks by and gets struck in the face by the shovel. That would be an injury that is caused by activity. But suppose a person walks by and falls into the hole. That would be an injury that would have been caused by a condition of the property. And what we have here is it's clear from the condition. There was no condition of the property in Reed. I'm sorry, Your Honor, I'm not familiar with the Reed case. Reed is where the employees of the Home Depot, or some such place, left a board with rusty nails sticking up on a pathway that customers use. There was no activity, but the court found that a negligence cause of action was appropriate. Your Honor, I believe that dealt with a different pattern of instruction, dealing with whether the property owner had actual notice. And that's what that case turned on. And because an employee of the store placed the plank of wood that had the nail protruding from it on the floor, it was clear that the property owner did in fact have notice of that condition. And an employee of the city, according to the evidence at the trial, left a small grinder on in the on position, which created the trench that caught Mr. Smart's front wheel. What's the difference? Your Honor, I don't believe there's any dispute in this case as to whether the condition of Cortland Street at the time of the accident was the result of the city's activity, that city employees created the condition of the road. That's undisputed.  And in this case, there was no activity taking place at the time of the accident. That what was left was that the city had acted upon the property, granted. Before the accident happened, the city was doing work. After the accident happened, the city resumed its work on the property. But the city's activity created the condition, and the condition is all that was left at the time of the accident. And so for that reason, the circuit court erred by relying on the activity exception in the notes on use. Just so I'm clear, your position is the city's only liable if the resurfacing were taking place at the time this man was riding his bicycle down the street. That's the only way you can hold them liable? Well, Your Honor, on the issue of which pattern of instruction should have been given, it's our position that it was improper for the circuit court to rely on the activity exception in light of how this accident actually happened. But the activity must be contemporaneous with the riding of the bike in order to use that particular instruction. That's what your position is. Well, Your Honor, I point you to the Moore case, the Supreme Court case that was decided that addressed the condition versus activity dichotomy. That case involved a man-made accumulation of snow, and that accumulation was alleged to have caused an injury. And the question there was whether that accumulation was better described as an activity or a condition. And even though the court decided that even though activity caused the accumulation to exist, it was nonetheless a condition of the property that caused the harm. So was it an activity that caused the injury or a condition, in your opinion? It was a condition of the property that allegedly caused the injury. But it was the activity, the resurfacing. Yes, Your Honor, an activity created the condition. We acknowledge that, yes. So you would have rather had the condition instruction. Yes. The IPI 120.08, which is the premises liability instruction, is properly given when a condition of property is alleged to have caused an injury as opposed to an activity. That's correct. And I'd like to reserve the rest of my time for rebuttal. Thank you, Mr. Collin. Good morning again, Ms. Etheridge. Good morning. Thank you for allowing oral argument in this important matter. I have been the lawyer involved in this case from day one, and I've been involved in all the trials of this matter. Some very important points, I think, need to be made here. First of all, this court did not just decide not to give a special interrogatory because she had some aversion to special interrogatory. She did give one of their other special interrogatories that was in proper form, that was properly submitted. And that special interrogatory specifically asked the jury to determine whether the roadway at the intersection of Marcy and Cortland was in a reasonably safe condition. They answered that no. When it came to the next special interrogatory that was given, I just heard argument that that interrogatory complied with B10.03. But there are some very specific words that were omitted from that interrogatory. Just as an example, the word total proximate cause is nowhere in their special interrogatory. B10.03, when it asks about whether the plaintiff's contributory negligence, if any, which is 50% or less, of the total proximate cause. Total is completely eliminated from their instruction. And all of the special interrogatories that have been allowed through the courts on this particular issue, they have either used the word sole, asking whether the plaintiff's comparative negligence or contributory negligence was the sole proximate cause, or they have used the term total. Was it the total more than 50% or less than 50% of the total proximate cause? But that isn't the reason the circuit court rejected the special interrogatory. You're correct. The circuit court rejected, but since this is review de novo, the circuit court rejected the special interrogatory because it was compounded, it front-loaded. It basically was telling the jury to assume, was the plaintiff's contributory negligence. That is sending a message to the jury, assume the plaintiff was contributory negligent, whereas here in this case, the jury found the plaintiff was not contributory negligence. They used verdict form A. They had the opportunity to find verdict form B, which would have allowed for a finding of comparative negligence of any degree. The jury didn't use that instruction. The way this instruction was worded, it was front-loaded. Was the plaintiff contributory negligent? That is like a message from the court saying, was the plaintiff, did the plaintiff do something wrong? If any is in the middle of this sentence, but that's not where it ends. You're asking the jury to do multiple things by way of a special interrogatory. They're having to find, was the plaintiff contributory negligent? And then they're having to find, was the plaintiff's contributory negligence more than 50 percent of the proximate cause and not of the total proximate cause? This could have been remedied very simply. And that is our biggest argument and our biggest issue with what transpired at this trial. She gave them the opportunity to come back and say, give us, she said, we'll be happy to review and listen to anything you have to say. Bring us some alternatives. They never brought any alternatives. As I read the transcript of the jury instruction conference, Judge Budzinski rejected the special interrogatory. You argued about it. She rejected it. Then you moved on to talk about some other instructions that needed to be modified. And at the conclusion of that session of the instructions conference, she said to the city, if you want to modify some things, bring them back tomorrow. I didn't understand her to be saying to the city, I will consider an amended special interrogatory. Well, sometimes I guess when you read things in black and white, they may not appear in the nuance of what was being said. But clearly any party has the right to bring other instructions back once instructions are denied to resubmit alternative proposed instructions and special interrogatory. Right. But in a waiver, I mean, this goes to your waiver argument, if the city believed that its special interrogatory was in proper form and the trial judge said she was not going to give that interrogatory, that there was no wiggle room there, the city doesn't then forfeit the issue on appeal by saying we're going to stick with the interrogatory in the form we presented it, right? You are absolutely correct. If it was my defending this case, I certainly would have come in the next morning as they did with some other revised instructions. I would have tendered something alternative. If they think it is correct, they do not have the responsibility to come back and tender alternative instructions, and they can stand on that. The problem, though, is this interrogatory, the special interrogatory, had so many problems built into it. You can't ask a jury to do multiple things in a special interrogatory. When you look at the cases that have allowed special interrogatories, they are asking a single precise question. Let's look at Johnson. Johnson asked was the lung cancer, the defense used Johnson. There was no disagreement as to whether the plaintiff had lung cancer in that case. It was agreed and acknowledged that the plaintiff had lung cancer, so they weren't being asked in the first instance, did the plaintiff have lung cancer, and if you find that the plaintiff had lung cancer, was that lung cancer a contributory cause of A or B? In our case, and in all the examples cited by the defense, there was one simple, singular question being asked, not multiple questions being asked. If this jury had answered that question, yes, it would have been irreconcilable with Verdict Form A. But if this jury had answered that question, no, an argument could also have been made that it still was irreconcilable, because if it was no, the plaintiff could still have been guilty of some contributory negligence that wasn't more than 50%. The test is whether the yes answer would be irreconcilable with the general verdict in the plaintiff's case. Yes, and it would. If the no answer is ambiguous, that doesn't necessarily mean it's an improper special interrogatory. You're correct, but it does highlight why this interrogatory is cumulative, and why it's front-loaded, and why it's bad, because it shouldn't be confusing to a jury. They should be able to say, was there comparative negligence? Was there contributory negligence? Yes or no? And if there was contributory negligence, then was it greater than 50% of the total proximate cause? To me, this whole issue could have been resolved by two very simple questions. You see them all the time in trials, and to me, the only reason in putting forth an interrogatory this way was to confuse the jury into thinking that this man was comparatively negligent from the get-go. The jury found he wasn't. They used verdict form A. Had they used verdict form B, then I guess there could have been a whole different argument made, that the jury didn't properly understand the instructions, but they didn't find that he was guilty of any comparative negligence. So if they had asked the question very specifically, very straightforward, not front-loaded it, in one simple sentence, and then asked a follow-up question, which has been done in cases, I think that would have been the appropriate thing to do here. The case law that has upheld special interrogatories on these points, they ensure that that question is a single, direct, simply answered question for this reason, because it is such an important aspect of the case to all of the parties. Does anyone have any other questions on that? Moving on to the next issue, the next issue of activity. What I'm hearing is that the activity has to be ongoing on the premises in order for there to be the premises liability instructions being used. That's just not anywhere in the instructions or anywhere in the case law. If you look at the scenario of events that transpired here, the city basically removed the surface on June 20, left the road in the unpaved condition, came back on the 25th with their small grinder, created additional defects that were a hazard to this bicycle route that fell directly in the pathway of these defects. The court needs to understand that right after this intersection, this bicycle route becomes a shared route for buses, cars, and other traffic, so that everybody is merging into the same lane right after this intersection. That was a very important point. There was nowhere for this man to navigate around these defects. They then came back on July 10, weeks later, to finish the project. This accident happened on July 1, dead smack in the middle of when this project was ongoing. There was no real dispute at trial as to the cause of the defect, period. There was one witness that was presented at trial by the city. All of their other witnesses were withdrawn. And this defect that was caused by the defendant's activity is what caused the damage. Now, there is no case, let's start with the Glass case. The Glass case basically said that in a sidewalk situation, where an activity results in the failure to repair a city sidewalk, nevertheless, the premises liability instruction should not be used, and the ordinary negligence instruction should be used. That is what Glass said. Glass is still good law today. The defense is actually the ones who cited Glass in their opening brief. Subsequent to that, they cited the Moore case. The Moore case is a case that involves a recreational property, as well as a natural accumulation of ice and snow. Completely different than a situation here where the defense created the defect. The premises liability instruction is typically used in a situation where there is a condition that the city may not know about. The city may not have notice about. So there's a whole big issue and whole big dispute going on as to whether or not the city has notice of it, whether there's actual, whether there's constructive notice, how this condition came to be. That is the appropriate use for a condition, premises liability instruction. In this case, when an activity, and the law is when an activity has caused the defect, the plaintiff does not have to prove actual or constructive notice, because it was caused by one of their activities, so they know about it. That is why one of the reasons when there is an ongoing activity, as was such in this case, the court determined that the ordinary negligence instruction should be given, because it removed it, specifically removed it, according to the notes, from that scenario where the plaintiff has to prove notice, from that scenario where the plaintiff has to prove that this is a condition on the premises that the defense may not have known about. It's an entirely different case. So once you get to the conclusion, which there was no dispute about, that the defendant's activities caused this harm, you don't start parsing out these instructions and say, well, because the activity was not in motion at the time of the injury, it's not an ordinary negligence instruction. There is no case that I have found where that says the activity has to be in motion. Let's say the special grinder had left an hour before this incident had happened. Under the defendant's scenario, this would still have been a premises liability instruction, under their arguments. That is not what the case law has said. The case law says you have to look at what has caused the problem. If it results from an activity, then you have to give the ordinary negligence instructions, and that is what this Court did, and that is what the Court made the option. But it also resulted from the defendant's business activities, not just from some unrelated activity by an employee or a random act by an employee. It is the business of the defendants to repair these streets. So I don't understand why, in this particular case, where open and obvious is a defense, it is not the plaintiff's burden to prove it, where the defense had the right to insert any language that they wanted to that was approved by the Court in the burden of proof in the issue's instruction, and the defense did insert their affirmative defenses, why they were at all harmed by not using the 120.08. The open and obvious defense was argued throughout this trial. They have, in their affirmative defenses in the issue instructions, that the plaintiff failed to look out for what he was doing. I think one of the reasons for the confusion is open and obvious is not typically a defense in an ordinary negligence case. It's contributory negligence if you're talking about open and obvious, but open and obvious is a term of art used in premises liability cases, that the condition of the property that the plaintiff says caused his injury was open and obvious. And so it seems to me that when the trial court said, we're going to have a trial on open and obvious, we were kind of mixing concepts. Well, I think in any case, an open and obvious defense, in any fall case, an open and obvious defense can be, in any bicycle case, in any motor vehicle case, open and obvious can be a defense almost to any kind of negligence case that you want to present. Because if something's open and obvious, I would assume the plaintiff's not going to encounter that situation and not be blamed for it in some way, shape, or form. So when she was saying we're going to trial on open and obvious, what she was meaning was, yes, you can raise the defense of open and obvious throughout the course of this trial. You can put it in your jury instructions. You can put it in your affirmative defenses. You will be allowed to present evidence on it. But she wasn't meaning to say that's going to dictate what instructions we use on this case. Instructions are tailored all the time to comport with whatever the situation is. So she wasn't making some conclusion or drawing some determination on what jury instructions to use. And I think that's where some of the confusion comes in. Because they keep arguing that the court said we're going to trial on open and obvious. Just because you're going to trial on open and obvious doesn't mean that you automatically get B120.08. If B120.08 doesn't comport with the remaining facts of the case, the activity, etc., then there would be no point in giving B120.08. And that's what transpired here. B120.08 does not comport with the notes. It would have been improper for her to give B120.08 under the facts of this case. And I also have to say that when the time came for this jury instruction conference and she had decided to give these instructions that she gave, 120.02 compiled with the other 10.04 and 20.02, there was no objection from the defense. And that's in the record. They agreed to give those instructions in those three coupled together. There was no objection. And I think that's very important. Because if there was going to be an objection, an objection should have been raised at that time. Having said that, is there any other questions on that issue? No? Okay. Having said that, I just... This is the only case. No, that's okay. I was going to comment about other things, but I really feel as if this trial court, knowing the facts of this case, tailored this group of instructions that was very appropriate for these facts. And I feel that instructions are not always perfect for every case. You will all have to agree, this is a unique case. Not many cases do you have against the city where they basically admitted that they created the defect. Where they basically admitted, we had them readmit in a request to admit that was then given to a stipulation to the jury that they knew about the problem. Well, but the city, notwithstanding the stipulations, the only testimony that the city presented was Mr. Stephan, who said, it looked like a perfectly level street to me. Yes, but he was also impeached on that. And I'm sure you've read his testimony. And we have the photographs that show the defect, as well as the people who were there at the time who actually felt he was not there at the time this defect was created. He was there in the first sequence of events of removing the pavement. There were other people who were disclosed and deposed who were there at the time that this defect was created. They withdrew those witnesses. They only decided to go to trial on this one witness. And he said, well, I'm looking at black and whites. He did not look at the color photographs until trial time. He said, I was looking at black and whites, and it just appeared to be a concrete shadow. This was a two-inch deep, five-inch wide, couple of feet long, and it's the exact same size of their grinder. The bottom part of their grinder makes these types of defects. And Mr. Holland, who has worked with the city on projects, recognized the defect and recognized the size that was comported with the grinder. And when we asked Mr. Stephan about it, he actually agreed with that. But his point was there was no defect. Well, he was not there. He was simply looking at photographs that were taken. He never went back to the scene afterwards. And I might also say that he was the one who was supposedly in charge of ensuring that this roadway was left in an appropriate fashion, because he was the foreman. So it would have been partially his responsibility to ensure that this project was done in a timely manner and done appropriately. Having said that, I just want to conclude with, when you look at the problems that would have been created by the giving of the special interrogatory, the problems that would have been created, the unfairness, the prejudice to the plaintiff, and asking a question of this nature that's cumulative, that has more than one question, it was just simply improper. And the trial court made the right decision on that. With regard to the activity, I have not seen any case that has been presented by the defense that has a fact pattern like this one where the court said you should not use the ordinary negligence instructions. The only case we have seen where there has been activity that has resulted in the problem, the courts have used the ordinary negligence instruction. It makes no sense to say that the activity has to be actually in process at the time the accident or injury occurs, because if that were the case, then we would be using the 120.08 in every single fact pattern, and you can tell from what 120.08 requires of the plaintiff to prove that in every case an actual and constructive notice is not required to be proved. So in closing, thank you, ladies and gentlemen. Thank you, Ms. Esher. Mr. Collins, some rebuttal? Just a few points, Your Honor. Initially, I'd like to clarify some initial remarks I made before regarding the open and obvious doctrine, how that relates to a defendant's duty. Open and obvious goes to a defendant's duty and is therefore a part of a plaintiff's case. The plaintiff has the burden of proving that the defendant owed a duty. According to the instructions, the plaintiff has to show the existence of an on-duty duty. The defendant then comes back and says, that pit on my property, that hole that I dug, was open and obvious. Therefore, the plaintiff loses. It's a defense. Well, the way IPI 120.08 is written, a plaintiff initially has the burden of proving that there was a condition that posed an unreasonable risk of harm. And then the plaintiff also has the burden of proving that the defendant reasonably should have anticipated that a person on the property would not have anticipated the condition, the dangerousness of the condition. And so it's clear from the pattern of instruction that the plaintiff has the burden of proving both of those things. Now, with respect to the special interrogatory, Mr. Smart believes that the special interrogatory that the city proposed should have been parsed into multiple separate questions. This Court has encountered, in other cases, has encountered special interrogatories that could have been parsed along similar lines, but the Court nonetheless has said that those special interrogatories were proper and that they did ask a single question. The Johnson case that was just discussed is an example of that because the special interrogatory there asked whether the cancer was caused in whole or in part by the defendant's activity. That special interrogatory could have been parsed, been deemed to have asked multiple questions, but the Court nonetheless decided that it asked a single question and was proper. Santos and Garcia are the cases we cited in our briefs, are similar cases that presented similar special interrogatories that could have been parsed, but were not because they asked a single question. Now, with respect to the jury instructions issue, as to whether the activity exception requires that there be activity ongoing, so to speak, at the time of the accident, that's not the city's position. It's not our position that the difference depends on whether activity is ongoing. To give an example that's closer to the fact pattern of this case, that hopefully illustrates the difference between activity and condition, suppose grinding were taking place at the time of the accident, and while the grinding is going on, a rock shoots out from underneath the grinder and strikes a person and causes an injury. That would be an injury that causes... Well, clearly the activity would be ongoing at the time of the injury. It was ongoing, but... Is there any case that makes that distinction for purposes of identifying premises liability versus ordinary negligence that says the activity must be ongoing? Your Honor, that's not our position here. Suppose in this case the city were at this intersection, at some place in the intersection, were in the process of grinding the street, so there would be some activity ongoing. But Mr. Smart encountered this spot on the road and fell off his bicycle because of the condition of that part of the property. That would still be an injury that would have arisen from a condition of the premises. Even though there was activity going on elsewhere on the property. So we're not relying on the idea that activity must be ongoing at the time of an accident in order for this exception to apply. There was some discussion about the Glass case. Glass was premised on an understanding that the open and obvious doctrine does not apply to sidewalks. Cases that have been decided since then, Waters, Sandoval and Postran, have applied the open and obvious doctrine to sidewalks. But in the case of sidewalk cases, typically, there's a defect in a sidewalk that the city didn't cause. It's evolved over time. The plaintiff alleges, I tripped over a broken piece of concrete. The city should have known that this piece of concrete was broken because two or three other people tripped over it and notified the city. That's your premises liability. The city didn't create the defect. So sidewalk cases are really beside the point when we're talking about this case where the city altered its property. It took off the surface of the street. It modified it. It created this trench. I don't see how that's not an activity. Your Honor, we acknowledge that through the city's activity, this condition, the condition of the road, was created. But ultimately, it was the condition as it existed at the time of the accident that actually caused the injury. Any property condition can be attributed to an activity or a lack of activity. And in this case, we acknowledge that city employees ground the street, left the street in the condition that it was in, but it's that condition that caused the accident ultimately. Now, with respect to the part of IPI 120-08 that deals with notice, there's no dispute that the city employee created this condition. So it would be feasible for the circuit court to cut out that, to modify IPI 120-08 to take out the notice requirement, since there's basically no dispute as to whether a city employee created this condition. Finally, I want to touch on the fact that IPI 120-02, which is the duty instruction for a premises liability case, was given in this case. The notes on use for IPI 120-02 say that this is the proper instruction for a premises liability case where a condition of the property causes an injury. Mr. Smart agrees that this instruction was properly given. The circuit court thought it was proper to give it, of course. A landowner has a duty to maintain its property in reasonably safe condition for those lawfully on it, whether the landowner is sued for negligence or premises liability. Isn't that right? Yes. So 120-02 was correct, no matter what the theory of recovery was. Well, 120-02 shouldn't apply to a case that's not a premises liability case. 120-02 is specifically for premises liability cases. No, I don't think I agree with you on that, because when the defendant owns land, 120-02 defines the duty of an owner of land, whether the owner is sued for premises liability or negligence. So ordinary negligence instructions are not going to instruct the jury that the city, as the owner of land, had this duty that the law implies. Your Honor, I think we're in agreement here. The notes on use for IPI 120-02, the duty instruction for premises liability case, says use this instruction if the injury was caused by the condition of the premises. So it's clear from that instruction that this instruction is to be used for a particular type of case, which is a premises liability case, which, of course, is a type of negligence case. It ultimately boils down to whether the defendant was negligent. But it's a particular type of negligence that's alleged in these types of cases. And the 120 series is specifically designed for that subset of negligence cases, the premises liability cases. And since 120-02 was given, it was entirely appropriate for 120-08 to be given. And by not giving it, the circuit court erred. And unless the Court has any further questions. Thank you very much, Mr. Collins. We ask that the circuit court's judgment be reversed and a new trial granted. Thank you. You're good. Mr. Collins, Ms. Etherton, I want to compliment the two of you on your briefs and on the arguments. This matter will be taken under advisement, and this Court stands in recess.